**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 25-CR-258 (JMC)** |
| **v.** | : | |
| | : | |
| **JEFFREY BRITT,** | : | |
| | : | |
| **Defendant.** | : | |

**THE UNITED STATES' MOTION TO ADMIT OTHER CRIMES**
**EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully gives notice that it intends to admit evidence of the defendant

Jeffrey Britt's prior convictions for second-degree murder while armed and possession of a firearm

during a crime of violence as evidence of the defendant's knowledge, intent, absence of mistake

and lack of accident as it relates to the instant matter under Federal Rule of Evidence ("FRE")

404(b).

**BACKGROUND[1]**

**A.  The defendant's 2009 D.C. Superior Court Conviction (2009-CF1-24214)**

On November 11, 2009, at approximately 11:45 a.m., the defendant and two co-defendants

followed the victim, G.R., after the victim left a funeral for one of his childhood friends. The

defendant, who was armed with a 9 mm caliber handgun, and the co-defendants, who were each

armed with pistols, shot G.R. numerous times as he attempted to board a Metro bus in the 1300

block of H Street, NE, in Washington, D.C. Thereafter, the defendant and co-defendants ran from

the area and were ultimately detained by law enforcement. An autopsy was performed on G.R.,

---

[1] This factual summary is being provided only as background information to aid the Court in
considering the United States' motion. It is not a complete description of all facts and evidence
that might be established and admitted at a hearing or at trial.

and medical professionals determined the cause of death as multiple gunshot wounds and the manner of death as a homicide.

On April 1, 2011, the defendant pled guilty to second-degree murder while armed (22 D.C. Code § 2103, 4502). and possession of a firearm during a crime of violence (22 D.C. Code § 4504(b)). On September 23, 2011, the defendant was sentenced to 240 months of imprisonment. On March 17, 2025, the court vacated the original sentence pursuant to the Incarceration Reduction Amendment Act and resentenced the defendant to 240 months of imprisonment execution suspended as to all but time served plus three days followed by five years of supervised release.

**B.  The Instant Offense**

Approximately three months after his release from incarceration, on June 28, 2025, at approximately 4:45 a.m., Metropolitan Police Department ("MPD") officers encountered the defendant while they were on routine patrol in the area of the 1900 block of 9th Street, NW, in Washington, D.C. There, officers observed a large group of individuals leaving the Cloud Lounge located at 1919 9th Street. A verbal altercation ensued, and several officers heard a loud bang coming from the group. Thereafter, everyone in the group turned and ran away from one person, later identified as the defendant.

Surveillance footage from the Cloud Lounge showed the altercation and the defendant standing nearby. In the screenshot below, the defendant, who is wearing all black with his back towards the camera, is circled in red. The individuals engaged in the altercation are circled in yellow.

**Figure 1**



The footage shows the defendant back up and face the group. The crowd then dispersed in a manner consistent with shots being fired. While all other members of the group ducked and ran away from the defendant, the defendant stood unfazed before turning around and walking northbound. Footage shows that the defendant was the only person in the group who walked northbound following the sound of gunshots.

**Figure 2**



As the defendant walked northbound, he made a throwing motion with his right hand and

then moved his right arm towards his waistband area.

**Figure 3**



At the time of the shooting, MPD Sergeant Irving Bolton, saw the defendant walking on

9th Street. Sergeant Bolton's body-worn camera ("BWC") captured the defendant standing at the

approximate location of the shooting and lifting both arms up in a shooting motion down towards

the sidewalk in the direction of those involved in the altercation.

**Figure 4**





Sergeant Bolton's BWC also captured the crowd dispersing as well as several individuals looking in the defendant's direction as they ran away.

Officers canvassed the scene and located a single shell casing in front of 1923 9th Street. Officers also located a firearm in front of 1933 9th Street. The firearm was next to a bicycle, and W-1 was standing right next to the bicycle. Sergeant Bolton's BWC footage also shows the defendant walking by the area where W-1 was standing with his arm outstretched, as if he was tossing something, before continuing northbound.

**Figure 5**



The recovered firearm was a .40 caliber Glock 27, loaded with one round in the chamber and 19 rounds in a magazine capable of accepting 30 rounds. The recovered shell casing was a .40 caliber casing.

**Figure 6**



After the shooting, W-2 told officers that they had the wrong person stopped, suggesting that an individual other than the defendant was the shooter. W-2 stated that someone in gray sweatpants had the firearm that morning, and that someone in a black hoodie is the one who shot the firearm. On-scene, W-2 provided officers with a false name, date of birth and phone number. At a later date, W-2 told investigators that she was intoxicated that night to the point that it impacted her memory and ability to perceive events.  She also admitted that she did not see anyone possessing or using firearms in any capacity. Officers also spoke with W-3, who indicated that someone shot at her but that she did not see the shooter.

A DNA analysis was conducted comparing a buccal sample taken from the defendant to swabs taken from the firearm and magazine. As to the swabs taken from the firearm, the DNA profile obtained from this item indicated a mixture of at least four individuals with at least one male contributor. Due to the complex nature of this mixed DNA profile, it was inconclusive for comparison purposes. As to the swabs taken from the magazine, the DNA profile obtained from this item indicated a mixture of at least four individuals with at least one male contributor. The DNA profile was interpreted as five contributors, and it was approximately 5.4 million times more likely if the sample originated from the defendant and four unknown persons than if it originated

from five unknown persons.

A ballistics analysis revealed that the shell casing recovered on scene was discharged from the firearm recovered that night.

On June 28, 2025, the defendant was charged in D.C. Superior Court Case No. 2025-CF2-7269 with unlawful possession of a firearm (22 D.C. Code § 4503(a)(1)) and carrying a pistol without a license (22 D.C. Code § 4504(a)(1)). On July 1, 2025, an amended complaint was filed against the defendant, additionally charging him with assault with a dangerous weapon (22 D.C. Code § 402) and possession of a firearm during a crime of violence (22 D.C. Code § 4504(b)). On August 29, 2025, the defendant was indicted in District Court with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1)) and unlawful discarding a firearm or ammunition (22 D.C. Code § 4503.04) (ECF No. 1). On September 4, 2025, the United States moved to dismiss the defendant's Superior Court case.

## LEGAL STANDARD

FRE 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, absence of mistake and lack of accident. *See United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). As the United States Court of Appeals for the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Id.* at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir.

1998) (*en banc*) ("*Crowder II*")); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under FRE 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of FRE 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material," and that "the prejudice must be 'unfair.'"); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations omitted) (emphasis in original).

Admission of Rule 404(b) evidence is permitted in the United States' case-in-chief. Specifically, the United States is entitled to anticipate the defendant's denial of intent and knowledge and introduce similar act evidence. *See United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

**ARGUMENT**

**A. The defendant's Prior Conduct Involving a Firearm is Admissible Under Rule 404(b)**

The United States seeks to introduce the facts related to the defendant's 2009 conviction for second-degree murder while armed and possession of a firearm during a crime of violence as evidence of his intent, knowledge, absence of mistake and lack of accident in possessing and discharging the loaded Glock 27 pistol in this case. Specifically, this evidence is relevant and probative to an issue other than character—that the charged act was done knowingly and intentionally and was not the result of mistake or accident. The probative value of this evidence would be significant in this case, particularly if the defendant denies that he was the shooter or that the seized firearm was his.

The D.C. Circuit has a longstanding and consistent rule of allowing the admission of "other crimes" evidence relating to the possession of firearms under Rule 404(b). *See, e.g.*, *United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008) (finding two prior PWID convictions and two firearm convictions "were not only relevant; they were also highly probative of both [the defendant's] intent to distribute the crack cocaine and his constructive possession of the gun and the drugs"); *United States v. Moore*, 75 F. Supp. 3d 444, 451-452 (D.D.C. 2014) (finding prior unlawful possession of a firearm evidence admissible under Rule 404(b) to show intent or lack of mistake).

Moreover, "knowledge of firearms is a permissible purpose under Rule 404(b)." *United States v. Bell*, 795 F.3d 88, 99 (D.C. Cir. 2015); *see also Cassell*, 292 F.3d at 794-95 ("A prior history of intentionally possessing guns . . . is certainly relevant to the determination of whether a person . . . on the occasion under litigation knew what he was possessing and intended to do so."). Indeed, "the D.C. Circuit has consistently allowed the admission of other crimes evidence relating

9

to possession of drugs and firearms under Rule 404(b) to demonstrate knowing possession and absence of mistake." *United States v. Williams*, 20-CR-121 (CJN), 2020 WL 7318006, at *4 (D.D.C. Dec. 10, 2020) ("A prior gun possession conviction is certainly relevant to demonstrate that [a defendant] was familiar with guns, and that his possession of a gun at the time of his arrest was not an inadvertent mistake.") (citing cases); *see also United States v. Ford*, 15-CR-25 (PLF), 2016 WL 259640, at *6 (D.D.C. Jan. 21, 2016) (concluding that the defendant's "2012 arrest and juvenile adjudication for firearms possession is probative of his intent to possess firearms in the instant case."); *United States v. Allen*, 226 Fed. App'x 290, 291 (4th Cir. 2007) (*per curiam*) (holding that evidence of a defendant's prior assaults and gun possession was admissible under Rule 404(b) to show knowing possession at trial for violation of 18 U.S.C. § 922(g)(1)).

Evidence admissible under Rule 404(b) is, like all evidence, subject to the restrictions of Rule 403. *See United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984). In this case, the probative value of the United States' proffered 404(b) evidence is not substantially outweighed by potential unfair prejudice to the defendant. In his prior case, the defendant carried the same type of firearm (a pistol) and proceeded to fire it towards another person, just as he did here. This evidence would show, among other things, that the defendant knew how firearms function and are used, and that he knew that he possessed a firearm in the instant matter. This evidence would also show that the defendant intended to possess the firearm and thus intended a specific outcome when he discharged the firearm. The defendant's knowledge regarding firearms would also show that the defendant's possession and discharge of a firearm was not a mistake or an accident.

Any potential prejudice is not unique to this case—where the United States has shown a permissible non-propensity purpose—but is common of all 404(b) evidence. Such evidence "almost unavoidably raises the danger that the jury will improperly 'conclude that because [the

defendant] committed some other crime, he must have committed the one charged in the indictment.'" *United States v. Douglas*, 482 F.3d 591, 601 (D.C. Cir. 2007) (quoting *Crowder II*, 141 F.3d at 1210). Prejudice in this attenuated sense cannot justify a *per se* rule of exclusion. *See Crowder II*, 141 F.3d at 1210. Instead, the defense must show "compelling or unique" evidence of prejudice, *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995), distinct from the probative value of the evidence and from the intrinsic prejudicial potential of any 404(b) evidence. The D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury. *See*, *e.g.*, *Douglas*, 482 F.3d at 601 (emphasizing the significance of the district court's instructions to the jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to the jury enter into the Rule 403 balancing analysis).

That the conviction stems from conduct in 2009 does not create the kind of unfair prejudice that substantially outweighs the prior conduct's probative value. Indeed, the age of a prior weapons offense does not diminish one's present knowledge or intent to exercise dominion or control over a firearm. *United States v. Fields*, 2019 WL 690347 at *2 (D.D.C. Feb 19, 2019). In fact, other circuits have rejected temporal bright-line exclusions for 404(b) evidence. *United States v. Thorne*, 2020 WL 122985 at *16 (D.D.C. Jan. 10, 2020) (collecting cases).[2] The operative question is

---

[2] Citing to *United States v. Thornton*, 515 F. App'x 101, 103 (3d Cir. 2013) ("Rule 404 does not put any express limit on the time that can elapse between the conduct underlying a prior conviction and the conduct underlying a charged offense, and we have not imposed a limit."); *United States v. Nava*, 83 F. App'x 172, 173 (9th Cir. 2003) ("There is no bright-line rule requiring the court to exclude evidence of other acts after a certain period has elapsed." (citing *Spillone*, 879 F.2d at 519)); *United States v. Baker*, 82 F.3d 273, 276 (8th Cir. 1996) ("[T]here is no fixed period within which the prior acts must have occurred."); *United States v. Zakaria*, 972 F.2d 344 (Table) (4th Cir. 1992) (per curiam) ("[T]here is no rule that states how many years will render a prior conviction stale for purposes of Rule 404(b) admissibility."); *Larson*, 112 F.3d at 605 ("Neither Rule 403 nor any analogous Rule provides any bright-line rule as to how old is too old."); *United States v. Fields*, 871 F.2d 188, 198 (1st Cir. 1989) ("[T]here is no absolute rule governing the

11

whether the evidence seemed stale. *United States v. Oral George Thompson*, 921 F.3d 263, 269 (D.C. Cir. 2019). In this regard, courts in this circuit have admitted prior conduct with comparative timeframes. *Fields*, 2019 WL 690347 at \*2 (admitting 16-year-old and 23-year-old gun offenses); *United States v. Anderson*, 174 F.Supp.3d 494, 495-6 (D.D.C. 2016) (conditionally admitting evidence of a prior possession of a firearm from six years earlier). Additionally, the defendant was just released from prison three months prior to the instant offense and was still on supervised release. This further cuts against any staleness argument. *See, e.g., United States v. Warren*, 788 F.3d 805, 812 (8th Cir. 2015) (holding that a prior conviction was not too remote for 404b purposes because the defendant had been in custody for much of the intervening time period and was only out of prison for five years before committing the instant offense); *United States v. Alaniz,* 148 F.3d 929, 934 (8th Cir.1998) ("[P]rior conviction was not too remote in time because [defendant] was incarcerated for almost the whole of the intervening period between that conviction and the indictment in this case.").

**CONCLUSION**

WHEREFORE, the United States respectfully submits that the Court grant the United States' motion to admit other crimes evidence pursuant to FRE 404(b).

---

number of years that can separate offenses."); *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) ("There is no absolute maximum number of years that may separate a prior act and the offense charged."); *United States v. Arnold*, 773 F.2d 823, 833 (7th Cir. 1985) ("[T]he length of time elapsed since the commission of the prior act is not *per se* determinative of its admissibility under Rule 404(b)."); *San Martin*, 505 F.2d at 922 ("The test for remoteness need not, and indeed cannot, be a simple rule of thumb based solely on the number of years that have elapsed between the prior crime and the present offense charged.")."

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:                    /s/
MICHAEL C. LEE
Assistant United States Attorney
CT Juris No. 436272
601 D Street, NW
Washington, D.C. 20530
202-252-7745
Michael.Lee4@usdoj.gov